# Ex. B

**State of West Virginia**
**Office of the Attorney General**
*John B. McCuskey*
Attorney General

# INVESTIGATORY SUBPOENA

**IN THE MATTER OF THE INVESTIGATION OF**

350.org[1]
P.O. Box 843004
Boston, MA 02284

YOU ARE HEREBY COMMANDED to answer this Subpoena and produce the documentary material in your possession, custody, or control described below for examination and copying on or before the **Return Date, November 2, 2026** to Zachary Viglianco, Director of Strategic Litigation, 1900 Kanawha Boulevard, East, State Capitol Complex, Charleston, West Virginia 25305. Copies may also be provided by mail to Post Office Box 1789, Charleston, West Virginia 25326.

This Subpoena is issued pursuant to W. Va. Code § 46A-7-104(1) and concerns an investigation into alleged unfair or deceptive acts or practices and other possible violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code §§ 46A-1-101 *et seq.* by the persons and entities that are the subject of this investigation. All information provided to the Office of the Attorney General pursuant to this Subpoena shall be retained in a confidential manner consistent with the provisions of W. Va. Code § 46A-7-104(4) and shall not be made

---

1 **Notice of Process (WV):** Humphreys Munai, 20 Jay Street, Suite 732, Brooklyn, NY 11201
**(DC):** Corporate Creations Network, Inc., 1629 K Street NW, Suite 300, Washington, D.C. 20006

public except upon the commencement of a subpoena enforcement proceeding as authorized by W. Va. Code § 46A-7-104(4) or a civil action to enforce the WVCCPA, W. Va. Code §§ 46A-1-101 *et seq.* or other law.

## INSTRUCTIONS AND DEFINITIONS

The following Instructions and Definitions shall apply when responding to this Subpoena:

### *Instructions*

**1.** The scope of this Subpoena is the Relevant Period, which began January 1, 2017 and continues up through the date of full compliance with this Subpoena, unless otherwise noted.

**2.** The term "350.org" shall mean and refer collectively to the recipient of this subpoena, including any of its corporate or trade names, predecessors, successors, divisions, subsidiaries, and affiliates, and any officer, director, employee, contractor, or agent acting on its behalf and not in a personal capacity only. For the avoidance of doubt, this subpoena is not intended to and does not reach materials held by any officer, director, employee, contractor, or agent of 350.org in their individual/personal capacity or materials that solely reflect their private associations.

**3.** The Subpoena encompasses all of the Documents, as defined in this Subpoena, that are within 350.org's possession, custody, or control, wherever situated, including in the possession, custody, or control of one of its owners, officers, operators, managers, employees, agents, subcontractors, successors in interest, and assigns.

**4.** If necessary, 350.org shall assist the designated representative(s) from the West Virginia Attorney General's Office in locating the Documents and information that are required to be produced in response to this Subpoena.

**5.** If the Documents requested are located or maintained outside the State of West Virginia, the West Virginia Office of the Attorney General may designate representatives to

inspect the Documents at their location and, if necessary, 350.org shall assist the designated representative(s) to inspect the Documents that are required to be produced by this Subpoena.

**6.** Whenever data requested by this Subpoena is stored electronically, you shall produce the data electronically in its native format (with all metadata intact) when reasonably practicable and when doing so will not hinder or frustrate accessibility, and if not practicable or accessible, in a manner and format such as Microsoft Excel, Access, or in another mutually agreeable, electronic format with all metadata intact.

**7.** When asked to produce Documents in your "possession, custody or control," you must produce the Documents if you have the legal right to control the Documents or things even if you do not have actual possession at the time of this request. *See Buckley v. Vidal,* 50 F.R.D. 271, 274 (E.D.N.Y. 1970) and *Colon v. Blades,* 268 F.R.D. 129, 132 (D. Puerto Rico 2010) ("Legal ownership or actual possession is not required; Documents are considered to be under a party's 'control' when that party has the right, authority or ability to obtain those Documents upon demand.")

**8.** This subpoena does not seek the identity of any individual donor, member, subscriber, or supporter solely on the basis of that individual being a member, subscriber, or supporter and does not require production of: (i) membership lists, (ii) donor lists, or (iii) records identifying individual supporters, members, subscribers, or volunteers in that capacity, except to the extent that organizational (not individual) funding sources are specifically identified in a request below. Where funding is requested, totals and the names of organizations are sufficient.

**9.** Nothing here requires production of attorney-client, work-product, or First Amendment associational privilege material. In the event that 350.org declines to produce any Documents required by this Subpoena on the grounds of privilege, you shall specifically identify

such Documents and timely disclose the grounds for such claim of privilege. To the extent 350.org asserts any privilege, it shall produce a privilege log by the Return Date identifying: (1) the Document or category of Documents withheld; (2) the privilege asserted; (3) the factual basis for the assertion; and (4) the specific request(s) to which the withheld Document is responsive. Where only a portion of a responsive Document is privileged, 350.org shall redact the privileged portion, produce the remainder, note each redaction on the privilege log, and mark the location of each redaction on the face of the produced Document.

### *Definitions*

**1.** "Document" shall mean and include, but shall not be limited to, the original and all drafts or non-identical copies of all written or graphic matter of any kind, however produced or reproduced, including facsimiles, summaries, financial statements, diaries, communications, invoices, receipts, log books, e-mails, telegrams, ledgers, accounts, press releases, reports, white papers, paid advertising, website and social media content (including posts, reposts, comments, and videos on organizational or work-related individual accounts), minutes, pamphlets, notes, interoffice communications, training materials, records of meetings, conferences, and telephone or other conversations or communications, and any electronic or magnetic record of the foregoing, or non-identical copies thereof, whether prepared by you or by any other person, that are in your possession, custody, or control.

**2.** The word "Pertaining" includes relating to, containing, alluding to, responding to, commenting upon, discussing, showing, disclosing, explaining, mentioning, analyzing, constituting, comprising, evidencing, setting forth, summarizing or characterizing, either directly or indirectly, in whole or in part.

3. The word "Published" means distributed, disseminated, made available, or otherwise conveyed by 350.org, or anyone acting on its behalf, to any person outside 350.org's own personnel, whether to one recipient or many and in any medium. It includes content that was access-restricted, embargoed, later deleted or retracted, Published anonymously or under a coalition or trade name, or authored by a third party that 350.org funded, commissioned, approved, or reposted. A request for a Published item also seeks all drafts and versions of it, including drafts never released, redlines, comments, and approval communications.

4. The word "West Virginia Recipient" means any natural person or legal entity associated with a West Virginia mailing address, billing address, IP geolocation, or telephone number.

5. "Climate Claim" means a statement asserting, on a purportedly scientific or statistical basis, a demonstrable or otherwise traceable connection between emissions of greenhouse gases from the extraction, processing, transport, combustion, or petrochemical conversion of fossil fuels (including, but not limited to, coal, lignite, oil, and natural gas) to changes in climate, weather patterns, and/or extreme weather events, including, but not limited to, climate/weather event attribution, impacts to public health, and economic harm (i) allegedly or purportedly caused by energy companies and/or projects or (ii) linked by name, or by clear and specific implication, with sufficient clarity that a reasonable recipient would understand the statement to refer to a specific WV Energy Business. This term does not include: (i) statements expressed as personal opinion or political opinion; (ii) statements made exclusively in the context of litigation as part of advocacy before a court; or (iii) pure scientific research published in peer-reviewed academic journals, absent evidence of knowing misrepresentation.

6. "Identified Claim" means a Climate Claim that appears in a Published item that is responsive to Demands Nos. 1, 2, 4, or 5.

7. "WV Energy Business" means any entity that, during the Relevant Period, is or was engaged, in any way, in extracting, processing, transporting, storing, burning, or petrochemically converting coal, lignite, natural gas, natural gas liquids, or petroleum in or from West Virginia and any predecessor, successor, parent, subsidiary, or affiliate of one.

## MATERIALS DEMANDED

*Public Statements and Climate Projections*

1. All Documents Pertaining to every statement 350.org Published that: (a) names a WV Energy Business, or a facility, mine, well, pipeline, plant, or project it owns or operates; and (b) makes a Climate Claim about it.

2. All Documents Pertaining to everything 350.org Published that uses Representative Concentration Pathway ("RCP") 8.5 or Shared Socioeconomic Pathway 5 ("SSP5") 8.5; Documents Pertaining to which organizations supplied those projections; and Documents Pertaining to communications regarding RCP 8.5 or SSP5 8.5 to any third parties. Documents Pertaining to whether to maintain, retire, replace, or qualify RCP 8.5 or SSP5 8.5, including any assessment of its plausibility or suitability as a baseline, any recommendation to switch scenarios, and any decision to retain the model notwithstanding such assessment(s) or recommendation. Documents Pertaining to RCP 8.5 or SSP5 8.5 being described as "business as usual," "baseline," "current policy," "reference," "no-policy," or anything similar, including whether that description was accurate, any objection to it, and any decision to retain or abandon that description.

3. All Documents relied upon, consulted, Pertaining to or referenced in preparing, reviewing, approving, or Publishing any of the materials identified in Demand No. 2.

**4.** For each Published projection concerning West Virginia: all Documents Pertaining to the emissions scenario chosen, why it was chosen, the key assumptions applied, and whether it was reviewed for technical accuracy before publication and the outcome of any such review.

*Solicitations to West Virginia Recipients &*
*West Virginia Specific Material*

**5.** For each donation request containing a Climate Claim that 350.org aimed, in whole or in part, at West Virginia Recipients, Documents Pertaining to:

a. each version sent;

b. how West Virginia Recipients were selected and the targeting criteria and audience segments;

c. total amounts solicited and received from West Virginia Recipients.

**6.** For each climate model that 350.org used, licensed, funded or commissioned, in whole or in part, or otherwise institutionally supported, and that produced a West Virginia-specific output, Documents Pertaining to:

a. the model, its version, and its source;

b. the West Virginia inputs, assumptions, and scenarios used;

c. the outputs, whether Published or not; and

d. communications about any gap between model output and a Published figure.

*Scientific Basis, Knowledge, and Contrary Evidence*

**7.** For any Identified Claim, Documents Pertaining to:

a. 350.org or any person, including but not limited to officers, directors, employees, contractors, or agents, disputing, contradicting, or qualifying the attribution model, study, or method behind it;

b. communications with World Weather Attribution or any other climate attribution organization about it;

c. internal objection or disagreement about its accuracy or confidence level; and

d. regulatory comments, agency submissions, testimony, and materials prepared for judicial education programs on climate science or climate litigation that repeat, discuss, rely upon, or otherwise concern the Identified Claim, including drafts, approvals, amendments, and withdrawals.

**8.** For each Published Document quantifying fossil-fuel subsidies, externalities, social cost of carbon, health costs, or economic damages: Documents Pertaining to the underlying data, the method, the discount rate, the damage function, and any pre-publication review.

**9.** For each study, report, model, or paper 350.org funded, commissioned, in whole or in part, or otherwise institutionally supported that concerns West Virginia, a WV Energy Business, or an Identified Claim, Documents Pertaining to:

a. funding agreements, statements of work, or contracts;

b. the amount paid and the organization paid;

c. communications about scope, method, assumptions, or scenario choice;

d. communications about review, revision, approval, or publication timing; and

e. whether and how the sponsorship was disclosed in any Published work.

**10.** Documents Pertaining to how any assumption, uncertainty range, confidence interval, model limitation, or contrary finding behind an Identified Claim should be described, simplified, emphasized, downplayed, qualified, or left out of public materials.

**11.** Documents Pertaining to:

a. any review, discussion, or analysis of new or updated evidence, data, or technical studies that may have contradicted, undermined, limited, or otherwise lowered confidence in previous Identified Claims of 350.org with regard to climate science and related Climate Claims; and

b. any decisions or other actions whereby 350.org actually withdrew, qualified, or reconsidered previous Identified Claims on the basis of new evidence, data, or studies.

*Third-Party Relationships & Coordination Efforts*

**12.** Documents Pertaining to efforts to coordinate with any third party to develop communications, strategies, or public relations campaigns or messaging about an Identified Claim or a WV Energy Business, including but not limited to strategy memos, campaign plans, communications calendars, talking points, message testing, polling or focus groups, embargo coordination, and agreed divisions of subject matter or audience.

**13.** For each Identified Claim, Documents Pertaining to any involvement by a renewable energy company, developer, trade association, or other entity engaged in solar, wind, geothermal, hydroelectric, biomass, biofuel, biogas, or hydrogen energy in the development, funding, review, approval, timing, publication, or distribution of the Identified Claim, including:

a. communications about the content, timing, funding, or distribution of an Identified Claim;

b. total funding received that was earmarked for work producing an Identified Claim, and which organization provided it; and

c. contracts, retainers, sponsorships, consulting arrangements, grant agreements, statements of work, or other arrangements relating to the Identified Claim.

**14.** Documents Pertaining to 350.org's financial, contractual, organizational, or governance relationships during the Relevant Period with renewable energy companies, developers, trade associations, or other entities engaged in solar, wind, geothermal, hydroelectric, biomass, biofuel, biogas, or hydrogen energy, including:

a. contracts, retainers, sponsorships, consulting arrangements, grant agreements, or other financial arrangements;

b. funding received from or provided to such entities, including the amount, purpose, and source of such funding;

c. shared officers, directors, employees, contractors, consultants, or board members; and

d. agreements or arrangements concerning joint projects, research, advocacy, communications, public relations, or other coordinated activity.

**15.** For third-party studies, models, or datasets 350.org cited or Published but not previously produced under Demand Nos. 1 through 14, Documents Pertaining to what they are and who produced them; communications with the author, publisher, or sponsor about method, assumptions, scenario choice, or conclusions; and 350.org' own assessment of their reliability or limits.

**16.** Documents Pertaining to dealings with any coalition, advocacy group, or organization operating in or targeting West Virginia about a WV Energy Business, an Identified Claim, or advocacy on West Virginia energy facilities, permitting, or regulation, including coalition agreements, joint work plans, shared budgets, grants, and funding given or received.

**Given under my hand this 16th day of September, 2026.**

John B. McCuskey
*Attorney General*

BY: ______________________

Zachary A. Viglianco (WVSB No. 12579)
*Director of Strategic Litigation*
Office of the West Virginia Attorney General
State Capitol Complex
1900 Kanawha Blvd, East
Charleston, WV 25305
(304) 558-8986 | Fax: (304) 558-0184

SEP 19 2026

SEP 19 2026